Good afternoon. Good afternoon. The Fort Dixert Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Good afternoon counsel. This is case number 419-0757, 419-0785. RLI Insurance Company, RLI versus Interinsurance Exchange of the Automobile Club. The appellant, and for the appellant is Thomas Marinson. You are here, sir? Yes. Okay. Is that pronounced correctly, Mr. Marinson? Yes, it is. Thank you. Okay. For the appellee is David Cutter. I am here, Your Honor. Thank you. Okay. And is that pronounced correctly as well, Mr. Cutter? It is. Thank you. Okay. Now, the bailiff has provided us with Mr. Cox, whose name is appearing and is also now appearing on our screen. Is my understanding correct, Mr. Cox, that you are representing a party but you will not be arguing during this time? That is correct, Your Honor. I represent Appellant's Claim Resource Partners, FLC, in a consolidated matter, 14-19-0785, and for purposes of today's consolidated proceeding, I'm prepared to join in the arguments of Mr. Marinson and cede my time to him. Okay. Thank you, counsel. So that'll be Mr. Marinson and Mr. Cutter doing the arguments. Mr. Marinson, on behalf of the appellant, you may proceed, sir. Thank you, Your Honor. Good afternoon. May it please the court. Counsel? Can you hear me? Yes, go ahead. Okay. Thank you. May it please the court, I'm appearing today on behalf of the dependent appellant, Interinsurance Exchange of the Automobile Club. I'll be referring to my client today as the exchange. We're here today because the claim resources and in favor of the Plaintiff Appellee RLI Insurance Company. The trial court found that RLI had no duty to defend or indemnify a claim against allegations of professional negligence that the exchange had made against a claim in a California state court proceeding. And to understand how we got here, it may be helpful for me to briefly summarize the parties and the client, the exchange, provides auto insurance to members of the AAA Auto Club. When it pays an accident claim of an insured who was not at fault, the exchange subrogated to the insured's rights against the at-fault driver. Now, rather than pursue those subrogation claims itself, the exchange hired a claim to do that. But the exchange and a claim relationship fell apart badly and the lawsuit against a claim in California State Court. That California suit is sometimes referred to as the underlying action, underlying suit, or underlying lawsuit in the parties briefs. At the time that California suit was filed, a claim was insured by RLI against claims alleging professional negligence. Now, the underlying suit in California contains a host of allegations against a claim. Admittedly, some of the allegations and theories of recovery are not covered by the RLI policy. But it is clear that others are and that's why there is a duty to defend you. Now, RLI argued that the underlying suit did not allege a wrongful act by a claim. RLI argued that the underlying suit did not seek damages. And RLI argued that the underlying suit triggered an exclusion in its policy that applies only to contractually assumed liabilities. The trial court agreed with RLI on all three of these points. The trial court accepted RLI's argument that the case against a claim is simply a fee dispute that seeks return of fees. But that's not accurate because there's a claim for negligent professional services in the underlying lawsuit. And that claim seeks tort decided that he assumed liability exclusion in the policy barred coverage here. Well, let me ask you this question with regard to that very point. Are there any facts on the allegations in the underlying action which would show negligence in the performance of the justice services? Yes, there's an allegation, paragraph 51 of the second amended complaint, alleges that a claim owed a duty of reasonable care in providing subrogation services to exchange and violated that duty by failing to recover all amounts that were due to the exchange and that would have been recovered, had a claim not engaged in professional negligence. It says by failing to provide competent professional subrogation services, including those required by industry standards, and by failing to investigate, evaluate and settle all claims in a professional manner. Well, just pausing right there, counsel, it sounds an awful lot like conclusory terminology. Where a factual state requires factual. Sorry, I froze. And I'm trying to figure out, can you hear me? I can. Okay, we're trying to, so the question is, other than a claim that they acted negligently, what are the factual vermin, factual allegations, which show negligence in the performance of the adjusted services? Well, I would agree with you that the allegations are bare-bones. They are conclusory. They are not excessively factual, but it's important to understand that California is a notice pleading state. It's not a fact pleading state. And the standard under Illinois law does not require the to affirmatively plead into a claim for coverage. All that Illinois law requires is that the allegations in the underlying complaint do not negate the possibility of coverage. And so long as there is a claim that alleges the negligent performance of subrogation services, and it's clear there is such a claim here, it may not be supported by the number of facts we would wish, but it is clearly alleged here, and it clearly raises the possibility of coverage, which is all that Illinois law requires. Mr. Bishop, if I understand it, I will certainly be asking Mr. Cutler to respond to it, is that essentially, California being a notice pleading state, a factual pleading one like Illinois, if you plead negligence and describe it in even conclusory terms, that's good enough to warrant coverage under the policy? I believe that's right, precisely because all the complaint has to do in Illinois is raise the possibility of coverage. It doesn't need to raise the probability of coverage, it doesn't need to establish coverage... But in Illinois experiences, you'd have to raise the possibility of coverage by pleading facts which would show that the coverage would, in fact, exist based upon the underlying complaint. Well, I don't actually... Yeah, I think if you look at cases in Illinois that deal with conclusory or bare bones allegations, and we cited a case in our reply brief, try and grab the name of it here for you, please. It's the Illinois Tool Works Decision, 2015 ILAP 1st 132350. That was a case where the complaint was brought against numerous defendants for asbestos related injury, and the insured tried to... The insurer tried to defend by arguing that there were not enough facts alleged to show that its policy was implicated. So for example, there was no allegation as to when the injury took place, and since injury had to take place during the policy period, the insurer said there simply weren't enough facts to bring the complaint within coverage. The court said, no, that's not correct. We understand that a plaintiff in an underlying action shouldn't be the sole arbiter of whether or not there's coverage. All we look at is whether there's a possibility of coverage and whether the allegations negate the possibility of coverage. So long as they don't, the insurer has a duty to defend. And... I was wondering this question as well, and I apologize in advance because they may just have missed it. I, a moment ago, asked you if your position is that being a notice state as well as a factual pleading state in California, that you can just essentially put people on notice about pleading specific facts, and that should be good enough for coverage here. Did you make that argument? And is that something which has been set forth at the trial court or particularly in the briefs of this court? Maybe I missed that point, but I don't recall it. I can't precisely recall whether it was argued below and or in the briefs here. I believe it was both. I'm quite certain we've raised at one point or another in these proceedings the fact that California is a notice pleading jurisdiction. Well, but it's an important distinction, it seems to me, if that's the basis for your claim, that would... What would otherwise be a requirement in the Illinois law, namely that you have to plead facts to show the coverage would apply as opposed to just saying they were negligent. That's a pretty important distinction and that would undermine, if you're correct, Mr. Cutter's entire position, wouldn't it? No, I think it does undercut Mr. Cutter's entire position, and I think that's where the trial court got it wrong. I think what's established by cases like the Illinois Tool Works case is that as long as there is a possibility of coverage, even if facts are missing, even if a complaint wouldn't necessarily pass the fact pleading standard in Illinois, that means we can't tell whether the complaint negates the possibility of coverage. And I would point out here that it's not simply that the exchange's complaint against a claim alleged a claim was negligent. It does allege facts, they are ultimate facts, they are conclusory, but they are facts and they are facts sufficient to squarely bring it within the coverage of the RLI policy. Go ahead. Sure. So another argument that RLI makes is that the court should disregard the allegations of professional negligence because that's just an attempt to manufacture coverage. But the cases on which RLI relies don't really support that result. The cases that RLI is citing involved a single site... I'm sorry, a single incident and an insured's attempt to characterize that incident as accidental when it clearly was not based on the facts. Unlike RLI's cases, this isn't a case where the appellants are trying to characterize a stabbing, arson, or sexual assault as accidental, and where the other facts in the complaint therefore negate the possibility of coverage. RLI's cases involve guilty pleas and judicial admissions of criminal conduct that made the allegations of negligence completely implausible. This case involves multiple incidents over a period of time, some of which were negligent and some of which were intentional. And there's nothing implausible about the notion that a claim was negligent in performing its services. The law doesn't allow RLI to simply lump all of that conduct together with other conduct and label it as intentional. And I think it's significant here that a claim tried to get the negligence count dismissed in California on the basis that it added nothing to the complaint and was duplicative of other causes of action. The trial court in California rejected that argument. It held that the negligence count introduced non duplicative facts or theories of recovery, and it issued a written opinion saying so. And that's part of the record here. Now, Illinois law is clear that even if only some of the theories of recovery alleged in a complaint are covered, there's a duty to defend. And you don't get to ignore those allegations based on the allegation, the accusation that they're merely an attempt to manufacture coverage. At bottom, RLI hasn't offered any evidence on that point. Instead, RLI is asking the court for an inference of wrongdoing on the part of the exchange based on the timing of the amended complaint and the underlying action. RLA is not entitled, excuse me, I'm not sure, Mr. Mearns, and I followed that last point you just made. Would you repeat that again? Sure. So one of the arguments that RLI has made is that the insertion of the negligence count into the second amended complaint in the underlying action should be disregarded. It doesn't come from an honest basis. It's merely an attempt by the exchange to manufacture insurance coverage. It doesn't really believe that a claim acted negligently. And my point here is that there's no proof of that. It's just their supposition. It's just an accusation. And they're asking for an inference because those allegations weren't added to the complaint until after RLI had already filed its coverage case. They're asking for an inference in their favor, even though they're the movement on a summary judgment motion. They're not entitled to that inference. A bigger point is that they're looking to avoid coverage on the basis that it was exchange, although they're insured, a claim isn't even alleged, isn't even accused by RLI to have had any hand in quote unquote, manufacturing coverage. And that's important for two reasons. First, Illinois law is crystal clear that the duty to defend on the part of an insurer extends even to groundless false or fraudulent claims. RLI explicitly incorporated that legal standard into its policy. Its policy explicitly promises to defend a claim against even groundless, false or fraudulent claims. I want to be clear here. The exchange did not manufacture coverage. But even if one credits that supposedly groundless, false or fraudulent claims, it's precisely a species of claims that RLI promised to protect the claim it's insured against. And it never argues that RLI had a hand in manufacturing. Well, if I understand correctly, the claim is that there's no showing of negligence in these rendering of professional services, not that the claims are bogus, they're just not being made. And I think it seems to me that it's a different sort of argument being made. And the fact that what is the explanation, if any, and what, how should this court or the trial court view the fact that the negligence count was a late addition? Well, it was a late addition. But the fact that it was a late addition, I don't think so here. Divorce from any other facts that indicate that it was added for an improper purpose. And remember, the cases they're relying on are cases where insureds engaged in criminal conduct. An insured stabbed the victim 18 times, pleaded guilty to a crime, then cobbled together a complaint that that tried to make the argument that the stabbing was negligent. That's, that's clearly manufacturing cover. Let me ask this counsel, would it be safe to say that but for the addition of the late count alleging negligence, that our our allies contention would be correct that they need not provide any coverage? No, Your Honor, it would not be correct. They had originally filed a motion for summary judgment based on the first amended, they being our ally, had originally filed a motion for summary judgment based on the first amended complaint in the underlying action. That complaint included a cause of action for fiduciary breach of fiduciary duty. Under California law, there can be a negligent breach of fiduciary duty. So our position would have been even without the addition of the negligence claim in the second amended complaint, there would have been coverage here. We were prepared to brief the motion that our ally brought under the first amended complaint. The fact is that events in the underlying action overtook events in the coverage action, which I'll come to this later if there's time is precisely why the court, even if it was correct, and it wasn't, that there's no duty to defend here, should not have been entering a decision on a duty to indemnify in a case that was still in the pleading stage. Even now, over a year, almost a year since the trial court issued its summary judgment in favor of our ally, we don't know which way the underlying action against the claim is going. We don't know which allegations will be credited and improved and which will not. We don't know the underlying action and the bans pending a resolution in this case. No, it is not. The underlying action is currently more or less stayed because of the pandemic as a result of which the trial court in California has stayed virtually everything in the case. In addition, there's an anti-slap motion that needs to be decided, so that case chugs along. So let me, since I see I only have two minutes left, I want to cover the assumed liability exclusion. We're not writing on a clean slate here. The language that our ally chose to use in its assumed liability exclusion is very different than the language in some of the exclusions. One excludes all types of liability that are imposed by contract. That's not the exclusion that our ally has. Our ally has an exclusion that only applies to liabilities that are assumed by contract. And there's seventh circuit cases decided under Illinois law that hold that the phrase assumed liability only refers to indemnity agreements or hold harmless agreements or the like where the insured takes on the liability of a completely different party. Not that this extends to every type of contractual liability that an insured might have. And there are eight different Supreme Courts that have rejected the overbroad interpretation that our ally seeks to place on its assumed liability exclusion here. The leading insurance law commentators Appelman on insurance, Osterger and Newman all recognize that there are different types of contract exclusions and all recognize that the courts interpret the exclusionary language that our ally itself decided on its own to put into its policy in a much more narrow fashion than our ally wants its exclusion to be interpreted here. Well thank you counsel you have an opportunity to address this again in rebuttal. Thank you. Okay Mr. Cutter on behalf of the Good afternoon. My name is David Cutter and I represent plaintiff Appelee RLI insurance company. I want to turn directly to the issues that Justice Stegman and Mr. Marenson were discussing regarding the allegations in the underlying claim in the underlying complaint and whether there is a wrongful act. Of course the first question in any insurance coverage dispute is whether the policy's insuring agreement is implicated. Here the question is whether there is a claim for a wrongful act. To satisfy that requirement the claim must be based upon an act or omission solely in the rendering or failure to render professional services. We have to go further than that. Professional services is defined as services rendered to others for a fee solely in the conduct of the insurance profession as stated in item seven of the policy declarations. Like a puzzle we now have to go to the policy declarations which identify the profession as solely in the performance of providing adjusted services. And then one more step is to go to the policy endorsement that defines adjusted services. And this is the critical language. It says adjuster services are the following services and I'm paraphrasing a little bit performed in the settlement of an insurance claim investigating and evaluating claims, negotiating settlement of claims including property values, damages, and depreciation. So with that framework that the policy is limited to claims for a wrongful act based upon that specific definition of adjuster services, because after all this is a professional errors and omissions policy, let's look at what the exchange relies upon to try to demonstrate that there is a claim for a wrongful act. First the exchange relies upon the fact that there is a claim for negligence in the underlying action. However, not all negligence is covered. Based on the language I just went over with the court, RLI's policy only covers negligence in connection with investigating and evaluating claims and negotiating settlement of claims. The factual predicate for the negligence count is the tendering of the false monthly reports that provided the basis for our claim shorting the exchange the amounts due under the contract. So the mere fact that there is a negligence count does not trigger coverage. Second, the exchange cites a single paragraph of the operative underlying second amended complaint as containing what it claims are these specific allegations on which it relies to trigger coverage. That paragraph is paragraph 51. As we explained on page 11 of our brief, where we quoted that entire paragraph, and then italicized the words that the exchange relies upon, that paragraph in context involves allegations about purported negligence and breach of the standard of care in relation to the in relation to the furnishing of adjuster services. Indeed, the alleged duty on which the negligence claim is predicated, as set forth in paragraph 50, involves the alleged duties to properly deal with the funds that a claim withheld as part of the contract. The exchange doesn't respond to this argument in its reply brief, which demonstrates that in context there is no covered claim for negligence in connection in connection with an adjuster services. What about the argument that you heard Mr. Marinson make that because California is a notice pleading state and they pled negligence and talked about and let's assume conclusory terms in terms that wouldn't meet the enough in California and it's possible thereby even though it's conclusory that the allegation is sufficient to constitute negligence within the policy that's good enough and your argument that more facts have to be pled is not well-based. What do you have to say about that? First of all, as I mentioned and I'm apologetic about it, I frankly don't recall this specific argument being made either at the trial level or in the briefs. So one, was it? And two, what do you have to say about it on the merits? With respect to whether it was made, they did mention that California was a notice pleading jurisdiction. They did not very strenuously argue based on my review of the record that that changed the entire duty to defend analysis under Illinois law because after all no one disputes that Illinois law applies here. So but on the merits I have two responses. First of all, there's not a single case that the exchange can point to that applies a different standard for the duty to defend whether the underlying claim is based upon notice jurisdiction or a fact-based jurisdiction. So we don't believe there's any support in the case law for applying a different standard. But more importantly, all duty to defend, all coverage analysis, are based upon the record presented in the particular case. And in this particular case, the notion that the underlying complaint is only a notice pleading complaint is without merit. The complaint is 76 pages long. It has 167 paragraphs. Many, virtually all of those paragraphs deal with specific allegations about the failure to provide accurate monthly reports, which was the mechanism by which a claim allegedly kept the amount that it that were owed to the exchange under the contract. So in in context, the allegations of this complaint are not ambiguous or abstract in any way. And that is what distinguishes this case from the Illinois tool works decision that Mr. Marenson mentioned. In that case, in that case, the underlying allegations would be read in favor of a duty to defend because there were group pleading allegations against specific defendants and not specific allegations that showed injuries during the insurers policy periods. The first district held that the group pleading against the insured that did not specifically identify the period of exposure with respect to the insured product, and therefore whether there was a potentially bodily injury during the insurers policy periods created a duty to defend because the group pleading alleged potentially covered claims. But that is not this case. In this case, did we lose? Did we lose Mr. Marenson? Sorry, I didn't want to proceed without him. In this we do not have that circumstance in this case, because there is no ambiguity in the allegations to be read in favor of the insured to find coverage. The simple fact is that the allegations do not raise the potential for coverage based upon negligence in investigating and evaluating claims, or negotiating settlement of claims. The allegations including those in paragraph 51 and in the first count of the complaint relate to the financial aspects of the contract and are not adjuster services as defined by the policy. Now, effectively, what the exchange is arguing is that the court conducting the coverage inquiry should read only the few words out of paragraph 51 that quote, in isolation, and ignore everything else to find that there's potential for coverage. But as I just discussed, the actual allegations make clear that the negligence alleged against the claim is in connection with remittance of fees under the contract, not in investigating, evaluating or settling subrogation claims. As teaches that the court should not look at the legal labels, but instead should look at allegations in context. For example, in American family versus Roth, the first district held that even though the underlying claimant had tort claims, those tort claims were all based upon a breach of contract, or trade secret infringement, and thus they were within the scope of excluded conduct. More directly on point because it deals with the threshold issue of a duty to defend this court's opinion and farmers versus Danner applied the same rules that our allies are doing should apply here, that the court should look at the entire complaint to evaluate the context of negligence allegations, that the circumstances in which the allegations were made matters, including that the and that the court should not give weight to the labels. And there the court found that the allegations of negligence did not trigger a duty to defend since in context, it became clear that the claimant was alleging intentional conduct, even as part of the negligence count. Those same facts are present here. The allegations in context make it clear they relate not to adjusting services, but to the payment dispute. The exchange does not address this case because it is dispositive of this matter. The Supreme Court's opinion in crumb is also notable. And then the court held that in errors and omissions policy for a real estate professional did not cover claims for intentional business towards an unfair competitive practices. The court found that even though the complaint included allegations that refer to real estate matters such as listings and commissions, those allegations did not form the genesis from which the claims made against the insured first arose. The court noted that the claim was not made against the insured because of incorrect performance of real estate services, but because of the insurance allegedly tortious conduct and unfair business practices, which were ancillary to the performance of their real estate services. As the court in crumb concluded, and our judgment to construe these error and omissions policies to cover the claims made in dependables complaint, as the insurance urges to do, would expand the coverage beyond what was contracted for by the parties. You heard, you heard Mr. Cutter, Mr. Marenson's argument, which he cited various other authorities, legal writers, other cases, I think the federal court and some state supreme courts. What is your response to those? On that issue, which of course, involves whether the contract exclusion bars coverage. So before the court gets to that issue, the court first has to determine A, that there's a wrongful act, and B, that there are damages. But on the contract exclusion, the arguments that are being, there is a whole host as cited by the parties in their briefs, there is a whole host of different language involving contract exclusions. But our view is that this exclusion here applies broadly to loss arising out of directly or indirectly resulting from or in consequence of or in any way involving any express warranties or guarantees by any insured, or liability assumed by any insured under any contractor agreement. So in our view, to apply the arguments made by the exchange here would read the language that it applies to any contractor agreement out of the contract, in derogation of basic principles of insurance coverage, law and insurance policy interpretation. Now, the second argument they make regarding the contract exclusion, is that because once again, because there's a negligence claim, then the exclusion doesn't apply to that. But this policy has broad triggering language in the exclusion. And if you apply a but for test and but for the existence of the contract, the exchange would have no claim and contractor tort against the claim. So we believe that the contract exclusion also applies to bar coverage. And the contract exclusion is consistent, not only with the definition of wrongful act that we've been talking about, but also with the issue about the fact that there are no covered damages thought in the underlying complaint. The exchanges arguments regarding the policy requirement that the claim involved damages suffers from a similar thing. If there are no damages covered by the Since the duty to offend is only implicated by any claim to which the insurance applies. Now section five v of the policy as modified by an endorsement exempts from the definition of damages, the return reduction or dispute over any fees, deposits, expenses, costs, or commissions charged or collected by the insurer. Now with respect to this issue, the exchange does not disagree that the underlying complaint seeks a return of fees that are not damages as defined by the policy. But the exchange turns back to the negligence count and argues that the complaint does not preclude the possibility that the court could award some other type of traditional tort damages. But there are no allegations about any type of damages, other than the economic injury of $3,145,229.40 of the wrongfully without fees that is sought in every count of the complaint. The negligence count itself seeks the seeks this economic injury that allegedly results from the wrongful conduct perpetrated, perpetrated, excuse me, with regard to all proceeds distributable to plaintiff and connection with or arising out of the abrogation recovery services. And that's directly from paragraphs 53 and 51 of the complaint. Moreover, Mr. Cutter, and that is Mr. Rarenson seemed to suggest that there's a timing problem with your litigation, given that the underlying litigation in California is still progressing, and there's uncertainty regarding it, and who knows what might happen there and all that, you're the argument. So I suppose two questions. One, is it correct that there's uncertainty and we don't know what's going on in California? And two, how should that address? How should that affect what this court does and what the trial court did? I, we do not believe, Your Honor, that that affects what this court should do or what the trial court did do in any respect. Now, I don't believe that the exchange is arguing that the ruling on the duty to defend was premature. So I believe all parties agree that the policy is unambiguous, no one has argued otherwise, and that the court, the trial court appropriately made rulings on the duty to defend is just that the exchange disagrees with those rulings. So this issue, Your Honor, deals with the duty to indemnify. Now, Illinois law provides that when there is no duty to defend, there can be no duty to indemnify. And the reason for that is simple. And policies like the R. L. I. Policy, the requirements for triggering the duty to defend and the duty to indemnify are coterminous in that they are triggered by the same events. It's just that the duty to defend is based on potential coverage, while the duty to indemnify is based on actual coverage. As a result, if there is no potential coverage, as the trial court found, then there is no duty to defend, and there can never be the narrow actual coverage. And in that circumstance, the Crum and Foster Court says very specifically that it is appropriate to resolve the issue of the duty to indemnify. More importantly, the exchange's argument simply does not exist. The exchange argues in its brief that the underlying action is in its infancy, and that something could change which implicates R. L. I.'s duty to indemnify. But the underlying action was filed nearly three years ago. There have been multiple amended complaints. It was filed in October 2017. At this juncture, there is nothing that is going to change the nature of that dispute that makes it premature to rule on the duty to court held, and that has been the law in Illinois for numerous years. Is the argument you're making to the court today inconsistent with the rule of law that the allegations in an underlying complaint are construed liberally, are not required to be in any particular form for insurance coverage? It is not, Your Honor, because what Illinois law says, the Crum and Foster case, this case, is that you must look at the allegations in context. So there is no liberal construction of the allegations here. The allegations in context, and I think Crum and Foster and Bertucci are very analogous, are that this is not about breach of professional conduct in connection with adjuster services, which is now related to negotiating and settling claims. This is about a breach of, this is about breach of contract with respect to the fee aspects of this arrangement. And so there is nothing to construe expansively here, because in context, there are no allegations that support coverage. And with that, we would ask that the trial courts, that this court affirm the circuit court's ruling in all respects, and I thank the court for its time. Thank you, Mr. Let me start, first of all, with Mr. Cutter's focus on paragraph 51. What I think is being lost through Mr. Cutter's argument is the fact that in his argument, he calls looking at the allegations on which we've focused, putting those allegations into context. He's not putting those allegations into the context of the complaint. He read you a portion of paragraph 51 of the complaint in the underlying action. He left an awful lot out in claiming it was only a dispute about the return of fees. There's an allegation right in paragraph 51, which deals with the failure of a claim to obtain a surety bond, as it was obligated to do. That has nothing to do with the return of fees. There are many different kinds of conduct that are alleged in the complaint. One of the things that is alleged in the complaint, clearly and unambiguously, is the negligence of a claim in evaluating and settling subrogation claims. That is professional negligence. Just because there are other allegations made that are not professional negligence, you don't get to read those out of the complaint completely in the guise of, quote unquote, reading them in context. It is possible, and indeed that's what this dispute is, it's a dispute over not only the return of fees, but also professional negligence. The sentences that Mr. Cutter wants to read in context, raise the possibility of coverage. And even the case that he cited, that he claims we did nothing to rebut, which we actually quotes the language we've argued throughout these proceedings. The duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy. Does not. The question of coverage should not hinge on the draftsmanship skills of the plaintiff in the underlying action. But that's precisely the result that Mr. Cutter wants to argue in the damages argument. There's a negligence cause of action here that Mr. Cutter wants to argue is really still all about the return of fees. The California State Trial Court overseeing the underlying litigation rejected that argument. The claim moved to dismiss the negligence count. It argued that it didn't add anything to the complaint by way of fact or theory of recovery. The California State Trial Court rejected that argument. It said in fact it does. Now the fact that the amount of damages pleaded is the same as the amount of damages pleaded and other causes of action doesn't turn a cause of action for professional negligence into something else. It just means that the maximum amount that the exchange is that it seeks in the return of fees. Mr. Cutter's point that he was arguing that given how lengthy the complaint was and many amendments set forth therein that it's significant that there is no more specific specificity regarding the negligence complaint. What about that? Well, the fact is that the duty to defend law in Illinois does not require such specificity. It requires only that the complaint raise the possibility of coverage. That's exactly what this complaint does. You can read it in context, you can read it out of context, however you want. There are sentences in this complaint that clearly and unambiguously allege professional negligence and there is no court, there is no decision from Illinois that says that a properly pleaded negligence count can simply be considered a very sharp guy. Where did we go wrong in granting the summary or the declaratory judgment here? I'm sorry, can you repeat the question? Judge Lawrence is a sharp guy. Where did he go wrong in his ruling? I think where he went wrong is he credited the notion that you get to characterize the complaint as a whole. And while you do need to review the complaint as a whole, that does not equate to being able to disregard clear allegations of professional negligence. You know, Mr. Carter is good at arguing his points. I don't blame the trial court judge for being confused about these points, but the fact of the matter is the threshold for duty to defend has been described over and over again in Illinois as minimal. This complaint raises the possibility of discard. Thank you very much counsel. You both on this involved case presented some very thorough arguments and we appreciate your advocacy. The court will take this matter in advisement and stand in recess.